IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 07-0563-WS-B ) |
| GMC CONCRETE COMPANY, INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

**ORDER**

This matter comes before the Court on the Motion to Dismiss Declaratory Judgment Action (doc. 13) and Motion to Stay Declaratory Judgment Action (doc. 14) filed by defendants Robert A. Mandal, Jr., and Alice Mandal, as well as the filing styled "Motion to Dismiss Complaint for Declaratory Judgment" (doc. 26) filed by defendants GMC Concrete Company, Inc. and George Sullivan. The motions have been briefed and are now ripe for disposition.[1]

**I.     Background.**

This insurance coverage dispute arises from work performed on a concrete courtyard and driveway at a residence being constructed for defendants Robert A. Mandal, Jr., and Alice Mandal (the "Mandals") in Biloxi, Mississippi. Certain concrete work was contracted to defendant GMC Concrete Company, Inc. ("GMC"), a corporation based in Mobile County, Alabama, whose president is defendant George Sullivan ("Sullivan"). The Mandals felt that the work performed by GMC and Sullivan was defective, and proceeded to file suit against them in the Circuit Court of Harrison County, Mississippi in May 2006. That action is styled *Robert A. Mandal, Jr., et al. v. GMC Concrete Co., Inc., et al.*, Cause No. A2402-06-103 (the "*Mandal*

---

[1] The Mandals' Motion to Dismiss was not originally accompanied by a brief, in contravention of Local Rule 7.1(a). For that reason, an Order (doc. 16) was entered requiring the Mandals to file the requisite brief. The Mandals complied, submitting memoranda of law eight days after the filing of their Motions, after which a full briefing schedule was entered. Defendants GMC Concrete and George Sullivan simply adopted the Mandals' arguments in their entirety; therefore, no separate briefing on the GMC/Sullivan Motion was needed.

Action"). The Mandals alleged that GMC and Sullivan had applied insufficient curative agent to the concrete, that they had negligently allowed the cement to dry for an extended period of time, and that attempted sandblasting repairs had exacerbated the damage. The Mandals' state-court complaint seeks recovery on grounds of negligence, unjust enrichment, misrepresentation and punitive damages. According to the parties, the *Mandal* Action remains pending at this time, and the discovery process is underway.

On August 8, 2007, more than 14 months after the *Mandal* Action commenced, plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") brought this declaratory judgment action in this District Court seeking a judicial declaration of its rights and obligations with respect to the underlying concrete dispute. Having issued a Commercial General Liability Insurance policy to GMC that provided certain coverage during the time period of interest, Atlantic Casualty requests a declaration that it has no duty to defend or indemnify GMC or Sullivan for claims asserted against them in the *Mandal* Action.[2] While awaiting such a ruling, Atlantic Casualty is furnishing a defense to GMC and Sullivan in the Mississippi litigation. Of significance to the instant motions, Atlantic Casualty has not been joined as a party in the *Mandal* Action; therefore, the insurance coverage issues (including duty to defend and duty to indemnify) are not pending before the Mississippi court, but are exclusive to these proceedings.

Now all four defendants urge this Court to dismiss or stay this declaratory judgment

---

[2] In its Complaint (doc. 1), Atlantic Casualty relies on seven different exclusions and policy provisions that it maintains excuse it from responsibility to provide indemnification or a defense in the *Mandal* Action. Specifically, Atlantic Casualty asserts as follows: (a) coverage is precluded by the independent contractors/subcontractors exclusion because the sandblasting work was performed by an independent contractor or subcontractor retained by GMC; (b) coverage is precluded by the property damage exclusion because the Mandals' theory of liability is that GMC and Sullivan incorrectly performed their work by improperly applying a curative agent; (c) coverage is precluded by the exclusion for damage to the insured's own product because the allegedly damaged concrete work is the "product" of GMC and Sullivan; (d) coverage is precluded by the exclusion for damage to the insured's work; (e) coverage is precluded by the exclusion for damage to impaired property; (f) coverage is precluded by the lack of any "occurrence"; and (g) indemnification for any punitive damages award is barred by operation of the punitive damages exclusion. (Complaint (doc. 1), ¶¶ 18-49.)

action because of the pending *Mandal* Action in Mississippi.³  In particular, defendants argue that the Court should exercise its discretion to refuse jurisdiction; however, their Motions (docs. 13, 14) diverge from their Briefs (docs. 20, 21) in the grounds asserted for seeking such an outcome.  The Motions state (with no citations to authority) that this action is premature because there has been no liability determination against GMC or Sullivan in the *Mandal* Action.  In that regard, the Mandals' Motions state, GMC's "exposure has not been determined, facts have not been justified, no judgment has been entered, and it cannot yet be determined if the insurance policy exclusions even apply."  (Doc. 13, ¶ 4; *see also* doc. 14, ¶ 4.)  By contrast, the briefs (save for one conclusory paragraph devoid of citations) eschew discussion of ripeness or prematurity, but instead focus exclusively on *Wilton/Ameritas* abstention.  The Mandals do not explain this disconnect between their Motions and their briefs.  However, because the Mandals never briefed the ripeness/prematurity issue, the requirements of Local Rule 7.1 remain unsatisfied with respect to that issue.⁴

## II.    Legal Standard.

Atlantic Casualty's claims in this action were brought pursuant to 28 U.S.C. §§ 2201 *et seq.*, seeking a declaration "regarding the scope and extent of insurance coverage provided under a Commercial General Liability policy issued by Atlantic Casualty to GMC ...."  (Complaint, ¶ 6.)  It is well-settled that the Declaratory Judgment Act "confer[s] on federal courts unique and

---

³ Procedurally, movants have unnecessarily complicated this Court's task.  Rather than filing a single, integrated motion to dismiss or, in the alternative, to stay, the Mandals filed two separate motions with two separate (but almost verbatim) memoranda of law.  It is an inefficient use of resources for the Court to inspect two virtually identical nine-page briefs line by line looking for any material differences.  Such duplication in filings is to be avoided whenever reasonably possible, in favor of either a single integrated motion or, at a minimum, the incorporation or adoption of one brief into another.

⁴ To credit defendants' conclusory objection that the declaratory judgment action is premature or unripe until a judgment has been entered in the *Mandal* Action, despite its having never been briefed, would be to lend tacit approval to an end-run around Local Rule 7.1 and to shift the burden of researching and articulating arguments from movants to the Court.  The undersigned declines to do so; however, as explained *infra*, the Court may entertain a properly supported, timely request to refrain from deciding the indemnity issue, depending on the resolution of the duty to defend issue and the status of the *Mandal* Action.

substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).  Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." 515 U.S. at 287 (citations omitted).  As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).[5]  "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000).

Consistent with the foregoing, it has long been recognized in this Circuit that a district court has discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).[6]  In *Ameritas*, the Eleventh Circuit reaffirmed *Ven-Fuel* and furnished district courts with guidance in how to wield their *Wilton/Brillhart* discretion under the Declaratory Judgment Act where there are parallel state proceedings.  The *Ameritas* court emphasized that district courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a

---

[5] *See also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324-25 (11th Cir. 2005) (explaining that district court's exercise of authority to proceed in declaratory judgment action is reviewed for abuse of discretion and that there is a zone of choice within which courts may go either way); *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ... vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action.").

[6] *Ven-Fuel* is in line with extant Supreme Court jurisprudence.  More than 60 years ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).  The *Brillhart* Court admonished lower courts scrupulously to avoid what it termed "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.*

declaratory judgment action when confronted with a parallel state action. 411 F.3d at 1330-31.[7] To assist district courts in this endeavor, *Ameritas* promulgated a non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action. *See id.* at 1331; *see also Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1238-44 (S.D. Ala. 2006) (applying *Ameritas* guideposts in context of declaratory judgment action filed by insurer after entry of state court judgment against putative insured).[8]

## III.   The Abstention Issue.

As a threshold matter, Atlantic Casualty challenges the propriety of an *Ameritas* analysis altogether, on the ground that this case and the *Mandal* Action are not parallel. This position appears well-founded. As mentioned *supra*, Atlantic Casualty is not a party to the *Mandal* Action and the insurance coverage issues animating this action have not been joined in the Mississippi proceedings. Because the parties, arguments and issues in this case differ from those

---

[7] These considerations have been echoed by other appellate courts. *See, e.g., Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (federal court "should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); *Mitcheson v. Harris*, 955 F.2d 235, 237-39 (4th Cir. 1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as pragmatic concerns of efficiency and comity).

[8] In *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit reiterated that the decision to hear a declaratory judgment action is discretionary, that such discretion should not be rigidly or mechanically applied, and that a vast spectrum of considerations is available to district courts deciding whether to hear such an action. *See id.* at 1135, 1137-38.

in the *Mandal* Action, there is no parallel state-court action. *See Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 997 (8th Cir. 2005) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.") (citations omitted). A number of courts have either held or suggested that the absence of parallel proceedings undermines the premise of a *Wilton* discretion analysis, rendering it inappropriate or inapplicable. *See, e.g., American Cas. Co. of Reading, Pennsylvania v. Sanders Hyland Corp.*, 2007 WL 841743, *6 (S.D. Ala. Mar. 16, 2007) ("where there are no parallel state proceedings, ... the *Brillhart* abstention doctrine is inapplicable and it is an abuse of discretion" to dismiss the declaratory judgment action).[9] The Eleventh Circuit has pointed out that "[a] court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues. It is an abuse of discretion, however, to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist." *Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000). It could be convincingly argued that a *Wilton/Ameritas* analysis has no place in this case because there are no parallel proceedings.

That said, the Court need not make a categorical ruling that parallel state proceedings are a necessary prerequisite to the vesting of discretion to decline to hear a declaratory judgment action.[10] Even if defendants were correct that the presence of a related (but not parallel) state-

---

[9] *See also Detco*, 426 F.3d at 998 ("A number of our sister circuits agree that the broad discretion granted in *Wilton* does not apply when there are no parallel state court proceedings."); *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir. 1996) (observing that cases "in which there are no parallel state court proceedings[] lie at the outer boundaries of the district court's discretion under the Declaratory Judgment Act"); *Cameron & Barkley Co. v. Fabreeka Int'l, Inc.*, 144 F. Supp.2d 1382, 1384 (M.D. Ga. 2001) (denying motion to dismiss declaratory judgment action on the ground that there were no parallel proceedings).

[10] The Eleventh Circuit does not appear to have squarely held that the discretion not to exercise jurisdiction over a declaratory judgment action depends on the existence of a parallel state lawsuit. *Thomas* involved a scenario where there was no state-court action at all, so the Eleventh Circuit might find that a related (but not parallel) state lawsuit suffices to trigger some form of limited discretion. Several other circuits have so held. *See, e.g., Detco*, 426 F.3d at 998-99 (discretion remains, albeit in more limited form, in deciding whether to exercise jurisdiction over a declaratory judgment action where there is no parallel state-court action); *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 394 (5th Cir. 2003) ("The lack of a pending

court action gives rise to *Ameritas* discretion, their Motions to Dismiss and to Stay would still fall short. *Ameritas* does not warrant abstention here. The bulk of the *Ameritas* guideposts (including the state's interest in deciding the matter, the likelihood of friction between state and federal courts or encroachment on state proceedings, the importance of underlying facts, the relative posture of state and federal courts to decide those facts, and whether policy/legal considerations support the state or federal court deciding the matter) only favor abstention when both the state and federal courts are asked to decide the same legal or factual issues. Defendants' briefs are long on vague allusions to overlapping facts, but distressingly short on anything approaching a specific showing that identical factual or legal questions have been placed before this Court and the Mississippi state court.[11] Other *Ameritas* guideposts (such as whether the

---

parallel state proceeding should not automatically require a district court to decide a declaratory judgment action ...."); *Aetna Cas. & Sur. Co. v. Ind-Com. Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("There is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action."). Even in those decisions, however, it has been recognized that the lack of a pending parallel proceeding "is a factor that weighs strongly against dismissal." *Sherwin-Williams*, 343 F.3d at 394.

[11] In their principal brief, defendants theorize that "[t]he pending state court case may result in a conflicting outcome." (Doc. 21, at 5.) They hypothesize that "the resolution of facts relating to coverage questions ... [is] also necessary to resolve the underlying dispute." (*Id.* at 6.) They reiterate that "[t]he state litigation will resolve factual issues that have a direct bearing on the coverage issues." (*Id.* at 6.) What facts? Defendants do not identify them, other than to suggest that "consequential sandblasting caused additional damage to the floor, walls, floors [*sic*], and landscaping," and that "[i]t may also be determined that Sullivan is not an independent contractor under the law." (Reply Brief (doc. 27), at 2.) But defendants have made no showing that the question of coverage for consequential sandblasting damage is at issue in this declaratory judgment action; to the contrary, they insist that it is not. (*Id.*) So if the Mississippi court makes a factual determination about consequential sandblasting damage that is not subsumed in any of the policy exclusions invoked by Atlantic Casualty in this action, there would be no conflict because this Court would not be addressing that question. Likewise, while this Court is being asked to apply the independent contractor exclusion of the Atlantic Casualty policy, defendants have made no showing that the Mississippi court will need to make a legal determination as to whether GMC qualifies as an "independent contractor" as defined in that policy. Simply put, defendants have failed to identify substantial issues of overlapping fact or law presented in these two cases, such that much of the rationale for *Ameritas* abstention simply is not supportable here. Defendants have not shown that resolution of Atlantic Casualty's duty to defend or indemnify GMC and Sullivan requires fact-finding that may conflict with facts found in the Mississippi proceedings.

declaratory judgment action would clarify the parties' legal relations and whether a superior alternative remedy exists) unquestionably favor allowing this case to proceed.  It cannot be reasonably disputed that a declaration of insurance coverage issues would clarify the parties' legal relations.  Further, it is undoubtedly a superior remedy for a court sitting in Alabama to interpret and construe an Alabama insurance policy in a declaratory judgment action and to make a timely declaration of the insurer's duty to defend obligations than for the question to remain undecided while the insurer provides a defense in the underlying Mississippi case, in which that insurer is not a party and as to which the insurer believes no duty to defend attaches.

Defendants proffer several additional arguments why they believe a stay or dismissal is appropriate; however, none are persuasive.  Defendants suggest that "Mississippi has a significant interest in having its state court resolve this matter" because it involves "negligent acts occurring in Mississippi" to Mississippi citizens.  (Doc. 21, at 5-6.)  Of course, the Mississippi state court will resolve all liability issues concerning those alleged acts.  Defendants have failed to explain how this action will in any way interfere with or encroach upon the Mississippi court's ability to do so.  Thus, this consideration does not favor abstention.  Next, defendants contend that if this declaratory judgment action is allowed to proceed, the result will be piecemeal resolution of this dispute in two different courts.  (*Id.* at 6.)  But if the Court declined to exercise jurisdiction, the insurance coverage issues would remain in limbo because they have not been joined in the Mississippi action.  Thus, the coverage and liability issues will inevitably have to be resolved in two different actions, regardless of whether the Court exercises jurisdiction or not.  As such, declining to exercise jurisdiction over this case would yield no efficiency improvements, but would simply force Atlantic Casualty to file another lawsuit at some other time or in some other place to secure a ruling on the coverage questions, which will not be answered in the Mississippi proceedings.  Finally, defendants somewhat confusingly accuse Atlantic Casualty of procedural fencing because "this action has been brought solely under 28 U.S.C. §§ 2201-2202, and not diversity jurisdiction."  (*Id.* at 6.)  At a minimum, defendants misread the Complaint, in which Atlantic Casualty plainly alleges that "[t]his court has jurisdiction pursuant to 28 U.S.C. § 1332(a)."  (Doc. 1, ¶ 7.)  No showing of procedural

fencing has been made here.[12]

In sum, it is doubtful whether an *Ameritas* analysis is even appropriate here given the absence of a parallel state-court action; however, giving movants the benefit of the doubt on that point, the *Ameritas* guideposts weigh heavily against the exercise of discretion not to hear this declaratory judgment action. To stay or dismiss this action in its entirety would deprive Atlantic Casualty of its right to a prompt resolution of the outstanding coverage issues, and would in no way promote the objectives of efficiency, comity, federalism, and non-interference with state-court proceedings on which the *Wilton/Brillhart* doctrine is founded.

## IV.    Ripeness/Prematurity Issue.

As discussed *supra*, defendants raised but did not effectively brief a ripeness/prematurity argument that Atlantic Casualty's declaratory judgment claims should be stayed or dismissed because the underlying Mississippi case must be concluded before the declaratory judgment issues will ripen. Even if that argument had been properly presented, it would not support dismissal or stay of this action in its entirety.

Recall that Atlantic Casualty in its Complaint seeks a declaration both as to its duty to defend and its duty to indemnify. There is ample support in the case law for the proposition that "an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Assurance Co. of America v. Legendary Home Builders, Inc.*, 305 F. Supp.2d 1266, 1270 (S.D. Ala. 2003) (citations omitted).[13] But the

---

[12]    Also, the Court is not swayed by defendants' argument in their reply brief that "[c]overage issues will be better defined once the parties know exactly what transpired" and that this action should be stayed "until the facts relating to the underlying state case in Mississippi have been decided." (Doc. 27, at 3-4.) Defendants seem to be assuming that the *Mandal* Action will result in a detailed recitation of findings of fact concerning the underlying conduct that can then be plugged into the insurance policy language to make coverage determinations. In the vast majority of civil actions, of course, there are no such findings of fact. Juries are not typically asked to render detailed factual findings of "exactly what transpired," and defendants fail to explain why they believe the Mississippi action will elicit such determinations. Nor have defendants shown any significant overlap between liability facts (which will be decided in the Mississippi case) and coverage facts (which are at issue here).

[13]    Some of these authorities couch the issue in ripeness terms, while others frame it as a matter of discretion and efficiency, rather than jurisdiction. *See, e.g., Nationwide Ins. v.*

duty to defend aspect of this action is situated differently.  GMC and Sullivan having invoked Atlantic Casualty's duty to defend in the *Mandal* Action and Atlantic Casualty disagreeing that such a duty exists, there is unquestionably a ripe, live controversy on that issue.  Indeed, "[c]ourts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated."  *State Farm Fire and Cas. Co. v. Myrick*, 2007 WL 3120262, *2 (M.D. Ala. Oct. 23, 2007); *American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 458 (5th Cir. 1960) (opining that duty to defend and duty to indemnify "are separate and distinct in the sense that the duty to defend does not depend upon the payment to damage claimant or the rendition of a judgment declaring the assured's legal obligation to pay").  Furthermore, the determination of whether the duty to defend is activated typically does not turn on factual findings in the underlying litigation.  *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("The insurance company's obligation to supply a defense is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured.").  Thus, regardless of the propriety of the timing and posture of Atlantic Casualty's duty to indemnify claims, its request for a declaration as to its duty to defend is clearly appropriate and should proceed at this time.

---

*Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit"); *American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (observing in context of declaratory judgment action concerning insurance coverage that "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass," such that district court "was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass"); *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp.2d 1205, 1211-12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability to the movants."); *State Farm Fire and Cas. Co. v. Myrick*, 2007 WL 3120262, *2 (M.D. Ala. Oct. 23, 2007) ("Resolving the duty to indemnify before the underlying case is concluded could potentially waste resources of the court because the duty to indemnify could become moot if the insured prevails in the underlying lawsuit."); *State Farm Fire & Cas. Co. v. Middleton*, 65 F. Supp.2d 1240, 1248 (M.D. Ala. 1999) (insurer's duty to indemnify insured "is not ripe for adjudication until [the insured] is in fact held liable in the underlying state court action").

The determination that Atlantic Casualty's duty to defend claims may go forward leaves unanswered the ultimate fate of its duty to indemnify claims.  After considering all of the circumstances (including defendants' failure to brief the ripeness / prematurity issue, and the reluctance of district courts to develop parties' legal arguments for them), the Court adopts the approach taken by the Northern District of Alabama in a 1999 decision, to-wit:

> "This court concludes that it should retain jurisdiction to hear both the duty to defend and the indemnification issues.  The duty to defend is more extensive than the duty to indemnify.  If the court determines that there is a duty to defend, it may well be appropriate not to then reach the further issue of duty to indemnify.  However, a determination that there is no duty to defend may well determine the duty to indemnify issue. Both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined ...."

*Employers Mut. Cas. Co. v. Evans*, 76 F. Supp.2d 1257, 1262 (N.D. Ala. 1999).  This action will proceed to final ruling on the duty to defend issue.  The duty to indemnify issue will remain part of the case, but will not be considered by the Court until the earlier of (a) final disposition of the *Mandal* Action; or (b) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty to indemnify claims.

## V.  Conclusion.

For all of the foregoing reasons, the Mandals' Motion to Dismiss Declaratory Judgment Action (doc. 13) and Motion Stay Declaratory Judgment Action (doc. 14), as well as GMC and Sullivan's Motion to Dismiss Complaint for Declaratory Judgment (doc. 26) are **denied**.  The Mandals having previously filed an Answer (doc. 12), GMC and Sullivan are **ordered** to file an answer on or before **December 21, 2007**.

DONE and ORDERED this 7th day of December, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE